IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RODROCK HOMES OF JOHNSON
COUNTY, LLC, *et al.*,

          Plaintiffs,

v.                                                                          Case No. 24-2592-JWB

CITY OF OLATHE, KANSAS,

          Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendant City of Olathe, Kansas', motion for judgment on the pleadings. (Doc. 14.) The motion is fully briefed and ripe for decision. (Docs. 15, 26, 27, 30.) The motion is GRANTED for the reasons stated below. Plaintiffs' motion for partial summary judgment (Doc. 31) is DISMISSED as moot.

**I.  Facts**

The facts set forth herein are taken from the allegations in the complaint. (Doc. 1.) In December 2024, Plaintiffs Rodrock Homes of Johnson County, LLC ("Rodrock") and Prieb Homes, Inc. ("Prieb") (collectively "Plaintiffs") filed suit against the City of Olathe, Kansas (the "City" or "Defendant"). (Doc. 1 at 1–2.) The dispute centers on the City's Park Excise Tax,[1] established under Olathe Municipal Code § 3.30 (the "Park Excise Tax" or "Ordinance"). The Park Excise Tax requires all residential developers to pay a one-time flat fee of $520.00 per dwelling unit before obtaining a building permit for residential construction. (Doc. 1 at 1–2.)

---

[1] The court notes that Plaintiffs refer to the specific payment schedule detailed in Olathe Municipal Code § 3.30.050 as the "Olathe Park Impact Fee" or "OPIF," whereas the Defendant refers to the same as the "Park Excise Tax." (Docs. 1, 15, 26, 30.) The court will hereinafter refer to the payment schedule as the "Park Excise Tax" as that is the term used to refer to the assessment in the Olathe Municipal Code. *See* Olathe Municipal Code § 3.30.

1

Since January 1, 2006, according to Plaintiffs, this fee has been applied to all residential development in the city. (*Id.*) The Park Excise Tax's stated purpose is to raise revenue in order to "assur[e] that neighborhood parks, parkland and open space is available . . . while maintaining current and proposed park and open space." *See* Olathe Municipal Code § 3.30.010. The Park Excise Tax requires that collected funds be deposited in segregated, interest-bearing accounts and used exclusively for parkland acquisition and development.[2]

Plaintiffs have developed multiple residential projects throughout the City of Olathe, often in areas already served by existing city parks. (Doc. 1 at 4–6.) Despite this proximity to existing parks, Plaintiffs were required to pay the Park Excise Tax to receive a building permit regardless of the development's location, size, or impact on park usage. (*Id.* at 7–8.) Proceeding under 42 U.S.C. § 1983, Plaintiffs assert that the Park Excise Tax amounts to an unconstitutional taking in violation of the Fifth and Fourteenth Amendments to the United States Constitution ("Count 1"). (*Id.* at 8) In response, the City argues that Plaintiffs have fundamentally mischaracterized the nature of the Park Excise Tax as described in chapter 3.30 of the Olathe Municipal Code. (Docs. 15 at 9, 11; 30 at 5–6.)

Plaintiffs have also brought a state-law inverse condemnation claim under K.S.A. § 26-513(a) ("Count 2"), which provides that "private property shall not be taken or damaged for public use without just compensation." (Doc. 1 at 13.) Plaintiffs argue that the value of their properties have been "diminished" based on having to spend the $520.00 Park Excise Tax to receive a building permit. (*Id.* at 15.) Plaintiffs' inverse condemnation claim, by their own admission, relies

---

[2] Plaintiffs assert that "the City . . . has not used said funds for the acquisition and improvement of neighborhood parks." (Doc. 1 at 7.) However, other than this conclusory statement, Plaintiffs provide no factual allegations supporting this claim of improper allocation, or commingling, of funds. Accordingly, the court deems such statement as conclusory and will give it no consideration in resolving this motion. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007).

entirely upon whether or not a "taking" is deemed to have taken place as part of their § 1983 claim. (Doc. 26 at 6–7.) In response to Plaintiffs' inverse condemnation claim, the City argues that because no compensable taking has occurred, Plaintiffs' state law claim must also fail as a matter of law. (Doc. 30 at 7). Defendant seeks judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) on various grounds. (Docs. 14, 15.)

## II.  Standard

Motions for judgment on the pleadings utilize the same standard as a motion to dismiss. *Ward v. Utah*, 321 F.3d 1263, 1266 (10th Cir. 2003). In order to withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to Plaintiffs. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). Conclusory allegations, however, have no bearing upon the court's consideration. *Shero*, 510 F.3d at 1200.

## III.  Analysis

Plaintiffs have developed multiple residential projects throughout the City of Olathe, often in areas served by existing city parks. (Doc. 1 at 4–6.) Despite this proximity to existing parks, Plaintiffs were required to pay $520.00 for each residential unit constructed, regardless of the development's location, size, or impact on park usage, in order to receive a building permit. (*Id*. at 7–8.) Plaintiffs contend that this expense is a monetary exaction—a condition for development imposed on a parcel of land—that must comply with the U.S. Supreme Court's "essential nexus" and "rough proportionality" tests established in *Nollan v. California Coastal Comm'n,* 483 U.S. 825 (1987) and *Dolan v. City of Tigard*, 512 U.S. 374 (1994) (hereinafter "*Nollan/Dolan*"

scrutiny). (Doc. 1 at 7–8.) Plaintiffs ultimately contend that the Park Excise Tax violates *Nollan/Dolan* scrutiny and thus amounts to an unconstitutional taking. (*Id.* at 8, 26.) Thus, Plaintiffs assert a § 1983 claim under the Takings Clause of the Fifth Amendment to the United States Constitution (*Id.* at 8), which prohibits the taking of private property "for public use, without just compensation." *See* U.S. Const. amend. V; se*e also Chi., Burlington & Quincy R.R. Co. v. City of Chicago*, 166 U.S. 226, 238–39 (1897) (incorporating the Takings Clause to the States through the Fourteenth Amendment). The City argues that Plaintiffs' claims must fail because the Ordinance merely imposes a tax which, as a matter of law, is not a taking under the Fifth Amendment.

To support a "Takings Clause claim, a plaintiff must plead that: (1) something was 'taken' by the government; (2) it was 'property'; (3) it was the plaintiff's property; and (4) it was taken 'for public use, without just compensation.'" *Knellinger v. Young*, 134 F.4th 1034, 1043 (10th Cir. 2025). Takings Clause claims arise under one of four different theories: (1) per se takings resulting in the permanent physical invasion of property; (2) per se takings that completely deprive an owner of all economically beneficial use of property; (3) regulatory takings governed by *Penn Central* standards, and (4) land-use exactions that violate *Nollan/Dolan* scrutiny. *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 538–39 (2005); *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 604 (2013); *Dolan*, 512 U.S. at 374; *Nollan*, 483 U.S. at 837. The court understands Plaintiffs' § 1983 takings claim, and state law inverse condemnation claim to be brought under a land-use exaction theory that allegedly violates *Nollan/Dolan* scrutiny. (*See* Doc. 1 at 8, 10 (Plaintiffs continually referring to the Park Excise Tax as a "monetary exaction" or the "City's exaction").)

A land-use exaction occurs when the government demands or requires money or property in exchange for approval of a land-use permit. *See Koontz*, 570 U.S. at 604. The earliest land-use exaction cases involved the "government demanding that a landowner dedicate an easement allowing public access to her property as a condition of obtaining a development permit." *Lingle*, 544 U.S. at 546. The Supreme Court resolved those cases in holding that "land-use regulation does not effect a taking if it substantially advances legitimate state interests and does not deny an owner economically viable use of his land." *Nollan*, 483 U.S. at 834. Out of that decision, *Nollan/Dolan* scrutiny was born.

Under *Nollan/Dolan*, the government is allowed to place a condition on the development of property, without compensation, provided that (1) an "essential nexus" exists between the condition and asserted state interest and (2) a "rough proportionality" exists between the condition and the "impact of the proposed development." *Nollan*, 483 U.S. at 837; *Dolan*, 512 U.S. at 391; *see also Koontz*, 570 U.S. at 605–06 (extending application of *Nollan*/*Dolan* scrutiny to purely monetary exactions). As a result, the government may "condition approval of a permit . . . so long as there is a 'nexus' and 'rough proportionality' between the property that the government demands and the social costs of the applicant's proposal," without committing a taking. *Koontz*, 570 U.S. at 612. When either a nexus is lacking or the condition is not roughly proportionate, the exaction amounts to a taking requiring just compensation. *Nollan*, 483 U.S. at 837–42; *Dolan*, 512 U.S. at 391–96.

Where, as here, the challenged conduct involves an exaction of money, application of the Takings Clause can sometimes be less clear and subject to heated debate. *See, e.g., Koontz*, 570 U.S. at 619 (Kagan, J., dissenting) (arguing Takings Clause is inapplicable when land-use permit conditioned on payment or expenditure of money); *E. Enters. v. Apfel*, 524 U.S. 498, 554 (1998)

5

(Breyer, J., dissenting) (arguing Takings Clause inapplicable because liability to pay money is not a property interest subject to that constitutional provision). However, in *Koontz*, the Court clarified that in contexts such as this, where the money exaction is directly tied to the grant or denial of a land-use permit, the property that is the subject of the taking is not the money, but rather the real property for which the permit is sought. *See Koontz*, 570 U.S. at 613-14. Thus, if the City's land-use permitting scheme in this case can fairly be characterized as a taking, then the legitimacy of the Park Excise Tax must be evaluated under *Nollan* and *Dolan*.

However, in analyzing a land-use exaction claim, and before it is even necessary to address *Nollan/Dolan* scrutiny, the critical first step is determining whether a compensable taking occurred in the first instance. *See Sheetz*, 601 U.S. at 280–81 (Sotomayor J., and Jackson J., concurring) (citing *Koontz*, 570 U.S. at 612) ("In the takings context, *Nollan/Dolan* scrutiny therefore applies only when the condition at issue would have been a compensable taking . . ."). Thus, a necessary predicate is that the "government could not have constitutionally ordered the person asserting the claim to do what it attempted to pressure that person into doing." *Koontz*, 570 U.S. at 612 ("[W]e began our analysis in both *Nollan* and *Dolan* by observing that if the government had directly seized the easements it sought to obtain through the permitting process, it would have committed a *per se* taking").

In other words, "the 'first step'" taken by a court is to ask "whether the condition would qualify as a taking if the government had directly required it" outside the permitting process. *Knight v. Metro. Gov't of Nashville & Davidson Cnty., Tennessee*, 67 F.4th 816, 825 (6th Cir. 2023) (citing *Koontz*, 570 U.S. at 612). If the answer is "no," then no takings problem exists. *Id*. Conversely, if the condition would be considered a taking had the government directly required it outside the permitting process, then the government carries the burden of surviving *Nollan/Dolan*

scrutiny. *Id*. In the current case, the decisive question becomes whether the Park Excise Tax under Olathe Municipal Code § 3.30—irrespective of the building permit being conditioned on its payment—would be considered a taking. The court concludes that it would not because, as explained below, taxation is a long-recognized and constitutionally distinct exercise of governmental power.

It is well established that the collection of a tax does not constitute a taking within the meaning of the Fifth Amendment.[3] "[T]axes are not themselves a taking but are a mandated 'contribution from individuals . . . for the support of the government . . . for which they receive compensation in the protection which government affords.'" *Tyler v. Hennepin Cnty., Minnesota*, 598 U.S. 631, 637 (2023) (citing *County of Mobile v. Kimball*, 102 U.S. 691, 703 (1881)). Courts consistently reaffirm that "[i]t is beyond dispute that '[t]axes and user fees . . . are not takings.'" *Koontz*, 570 U.S. at 615 (quoting *Brown v. Legal Found. of Washington*, 538 U.S. 216, 242 n.2 (2003) (Scalia, J., dissenting)); *Ballinger v. City of Oakland*, 24 F.4th 1287, 1296 (9th Cir. 2022), *cert. denied sub nom. Ballinger v. City of Oakland, California*, 142 S. Ct. 2777 (2022) ("[T]he obligation to pay money in the tax and government services user fee context is not generally compensable under the Fifth Amendment because taxes and user fees are collected in exchange for government benefits to the payor"). Perhaps most succinctly, it can be said that "the government [can] directly compel ordinary taxes without a takings concern." *Knight*, 67 F.4th at 826.

Plaintiffs argue that the Park Excise Tax should not be categorized as a tax and point to factors set out by the Kansas Supreme Court that differentiate a fee from a tax. (Doc. 26 at 7.)

---

[3] Of course, any tax is a "taking" in a literal sense, but a bona fide revenue-raising measure is not a taking in a constitutional sense. *See Koontz*, 570 U.S. at 612-15; *Morton Salt Co. v. City of South Hutchinson*, 177 F.2d 889, 892 (10th Cir. 1949).

Specifically, Plaintiffs argue that the Park Excise Tax should not be categorized as a tax because it "is not required from the general public, but only from building permit applicants" and is not meant "to raise revenue for governmental services" because its intent is to "'provide neighborhood parks in developing residential areas.'" (*Id*. at 7–8 (citing Olathe Municipal Code § 3.30.010).) Plaintiffs' conclusory allegations, however, offer little support for the contention that the Park Excise Tax is not properly categorized as a tax.

In response, the City argues that the Plaintiffs have fundamentally mischaracterized the nature of the Park Excise Tax as described in chapter 3.30 of the Olathe Municipal Code. (Docs. 15 at 9, 11; 30 at 5–6.) The City's argument proceeds by explaining how the assessment under Olathe Municipal Code § 3.30 is properly categorized as a tax. Specifically, the City points to the plain language of the Ordinance which states that the excise tax's purpose "is to raise revenue to provide a service to the public—the development of parks." (Doc. 30 at 4–5 (citing Olathe Municipal Code § 3.30.010).) The City emphasizes that parks, whether designated as neighborhood, community or merely open spaces, are amenities available to the general public and thus taxation in order to acquire and improve them are within the local government's purview. (Docs. 15 at 11; 30 at 5–6.) In summary, the City argues that Plaintiffs' right to develop property does not encompass a right to develop said property free from generally applicable tax obligations, and that treating such charges as takings would undermine municipal finance systems. (Doc. 30 at 5–6.)

If the Park Excise Tax is properly categorized as a tax, then it falls outside the bounds of a compensable taking and is a proper exercise of the City's taxing authority. In determining whether an assessment should be categorized as a tax, the Tenth Circuit has provided the following

8

characteristics of a tax in the context of the Tax Injunction Act. *Marcus v. Kan. Dep't of Revenue*, 170 F.3d 1305, 1311 (10th Cir. 1999). The Tenth Circuit stated:

> [T]he classic tax sustains the essential flow of revenue to the government, while the classic fee is linked to some regulatory scheme. The classic tax is imposed by a state or municipal legislature, while the classic fee is imposed by an agency upon those it regulates. The classic tax is designed to provide a benefit for the entire community, while the classic fee is designed to raise money to help defray an agency's regulatory expenses.

*Id.* at 1311. Through this description of the general differences between taxes and fees, the Tenth Circuit has established a three-factor test to determine whether an assessment should be categorized as a tax. Additionally, in deciding whether a charge more closely resembles a tax rather than a fee, the Tenth Circuit explained that the name or label that the monetary assessment is given by the state or city government "is not dispositive." *Id.*; *see also Hill v. Kemp,* 478 F.3d 1236, 1244 (10th Cir. 2007) (noting the distinction between a tax and a fee turned on the purpose of the assessment and the use to which the proceeds were put). The "critical inquiry" looks to the "purpose of the assessment and the ultimate use of the funds." *Lamar Co., LLC v. Unified Gov't of Wyandotte Cnty./Kansas City, KS.*, 306 F. Supp. 2d 1139, 1152 (D. Kan. 2004) (citing *Marcus*, 170 F.3d at 1311); *Snodgrass v. City of Wichita, Kansas*, No. 18-1231-JWB, 2018 WL 6019344, at *2 (D. Kan. Nov. 15, 2018) (citing *Hill*, 478 F.3d at 1247) ("The label that Kansas provides to the assessment does not resolve "the question whether or not it is a tax . . .'"). Against this backdrop, the characteristics of a tax become clear. And the subsequent evaluation of these three factors supports the conclusion that the Park Excise Tax is properly categorized as a tax. Therefore the Park Excise Tax falls outside the bounds of a compensable taking and, rather, is a proper exercise of the City's taxing authority. The court will address each factor in turn.

First, the Park Excise Tax sustains essential revenue flow to the government. *See* Olathe Municipal Code § 3.30.010 (stating the assessment is imposed "in order to raise sufficient revenue to address the public need for parks"). "If revenue is the primary purpose, the imposition is a tax." *Hill*, 478 F.3d at 1244 (holding "the specialty plate licensing" expense to be a tax because it sought "not merely to cover its administrative costs but to raise revenue for a wide array of public purposes."). Plaintiffs argue that the purpose of the Park Excise Tax is not to raise revenue and contend that the Park Excise Tax compensates regulatory costs of the City. (Doc. 26 at 7–8.) Plaintiffs' complaint, however, fails to sufficiently allege that the funds collected from the permit are instead used to pay such regulatory costs. Such allegations are conclusory. In looking at the facts, the Park Excise Tax explicitly states that it is not meant to defray regulatory expenses. *See* Olathe Municipal Code § 3.30.080 (explaining that the tax funds are to be used "solely for the purpose of funding parkland and open space acquisition and development pursuant to the Comprehensive Plan."). The Ordinance explicitly prohibits using these funds to "operate the park system or to operate recreational activities"—activities that might be considered regulatory in nature. (*Id.*) Therefore, Plaintiffs have not plausibly alleged any facts to support their assertion that the funds are not used as revenue for the parks. This factor favors the Park Excise Tax being categorized as a classic tax.

Second, the Park Excise Tax is imposed by the municipal legislature (the "Governing Body") rather than by a regulatory agency. *See* Olathe Municipal Code § 3.30.010-.020. Chapter 3.30 of the Ordinance establishes that the Governing Body has the authority to amend the tax rate and ordinance annually and explicitly defines the "Governing Body" as "the legislative body of the City of Olathe, Kansas." (*Id.*) This factor favors the Park Excise Tax being categorized as a classic tax.

10

Third, the Park Excise Tax is designed to provide a benefit for the public good—that is, to ensure "that neighborhood parks, parkland and open space [are] available . . . to address the public need for parks." *See* Olathe Municipal Code § 3.30.010.  Plaintiffs interpret this language to mean that because these city parks are located within a specific neighborhood that they serve a limited radius and thus are not for the general good. (Doc. 26 at 7.)  This argument is misguided as it conflates proximity with exclusivity.  The benefits received by the general public in return for a tax burden need not be direct or individually measurable—indeed, most public benefits from taxation are indirect and intangible, serving the community as a whole rather than discrete taxpayers. *See Morton Salt Co.*, 177 F.2d at 892 ("[I]t is constitutionally sufficient if the taxes are uniform and are for public purposes in which the whole city has an interest.").[4]  Certainly, public parks are facilities traditionally known to be open to all.  The provision of parks is plainly a public good, similar to libraries, fire protection, or public schools.  Nowhere in the Ordinance is it stated that the parks to be developed and improved are exclusive amenities for taxpayers. *See Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983) ("[P]arks . . . 'have immemorially been held . . . for the use of the public"); *Lamar Co., LLC*, 306 F. Supp. 2d at 1150 ("[P]arks . . . benefit the community as a whole."); *Hawkins v. City & Cnty. of Denver*, 170 F.3d 1281, 1286 (10th Cir. 1999) (stating that the "[q]uintessential traditional public fora are . . . parks" in the context of the First Amendment).  A park built near one neighborhood is still open to all, just as a new public library constructed in a particular district serves the entire city's needs for

---

[4] *But see Brushaber v. Union Pac. R. Co.*, 240 U.S. 1, 24-25 (1916) (holding that taxes could constitute a taking if "the act complained of was so arbitrary as to constrain to the conclusion that it was not the exertion of taxation, but a confiscation of property").  In the current matter, Plaintiffs do not allege that the Park Excise Tax is arbitrary or a confiscation of property.  Rather, Plaintiff's assert the Park Excise Tax is not a tax at all.  In any event, based on examples of when courts have found a tax to be "arbitrary" or a "confiscation of property," this court has no difficulty finding that a one-time $520.00 tax on residential developments does not fall within this exception. *See, e.g., Heiner v. Donnan*, 285 U.S. 312, 328–31 (1932) (finding a law to result in an "arbitrary" taking under the federal Constitution that "conclusiv[ly] presum[ed]" any gift made within two years of the donor's death was made "in contemplation of death" and thus subject to the federal estate tax).

education. The reference to a neighborhood park set out in Olathe Municipal Code § 3.30.020 simply reflects efficient park planning and makes no mention of restricted park access, as suggested by Plaintiffs. (Doc. 26 at 8.) Plaintiffs have not plausibly alleged any facts to support their assertion that the funds are not used to provide a benefit for the public good. This factor favors the Park Excise Tax being categorized as a classic tax.

In summary, the three factors identified by the Tenth Circuit to be used for determining whether an assessment should properly be categorized as a tax make clear that the Park Excise Tax is comprised of all the traditional features of a classic tax. *See Marcus*, 170 F.3d at 1311.

Plaintiffs further argue, in drawing on precedent from the Kansas Supreme Court, that the Park Excise Tax is not properly categorized as a tax, and rather should be categorized as a fee, because it is voluntary in the sense that developers can choose whether or not to develop their properties. (Doc. 26 at 6–8.) Specifically, Plaintiffs cite the Kansas Supreme Court which states that a "fee is voluntary—an individual can avoid the charge by choosing not to take advantage of the service, benefit, or privilege offered." *Executive Aircraft Consulting, Inc. v. City of Newton*, 252 Kan. 421, 427 (1993). This logic would make virtually every tax "voluntary" by the same reasoning—*i.e.*, property owners could avoid property taxes by selling their land, businesses could avoid business taxes by closing their business, etc. Courts have soundly rejected such reasoning. *Hill*, 478 F.3d at 1253–55. The Tenth Circuit has explained:

> [P]rivate citizens routinely incur different levels of compulsory taxation based on the voluntary choices they make. Thus, for example, in addition to the normal taxes one pays when purchasing a new car, a higher 'luxury' tax may be incurred by those buyers who choose a particularly expensive vehicle. . . . Those who incur this luxury tax do so 'voluntarily' in the same sense that those who purchase specialty license plates bearing some preferred message do so 'voluntarily.' . . . The fact that the transaction in either case is voluntarily undertaken with full foresight of the inevitable (and most certainly not bargained for or voluntarily chosen) assessment makes the assessment involved no less a tax. Indeed, though our car-oriented

> culture may make it sometimes seem otherwise, the very decision to purchase and drive a car is itself a voluntary one (no one is forced to have a car, after all) and it, too, for[e]seeably involves the payment of a sales tax and a tax for even a basic license plate. So it is that a very great many taxes we are every day compelled to pay are a result of our voluntary decisions (the decision to work harder this year and perhaps risk a higher income tax bracket, the decision to purchase a home rather than rent and thus incur real estate taxes, etc.).

*Id.* at 1253.

"[T]easing out the difference between taxes and takings is more difficult in theory than in practice." *Koontz*, 570 U.S. at 615–16. This sentiment holds true in the current matter. Plaintiffs merely offer formulaic recitations and conclusory allegations regarding why the Park Excise Tax ought not be regarded as a tax and is thus subject to *Nollan/Dolan* scrutiny. *Shero*, 510 F.3d at 1200 (explaining that conclusory allegations have no bearing on a court's consideration). Indeed, because the Park Excise Tax (1) sustains the flow of revenue to the government, (2) is imposed by the City of Olathe (a municipal legislature), and (3) provides a benefit for the general public, the court readily finds that, based on the factors laid out by the Tenth Circuit, the Park Excise Tax is properly categorized as a tax. *See Marcus*, 170 F.3d at 1311. Because Olathe Municipal Code § 3.30 is a proper exercise of the City's taxing authority, then there occurred no compensable taking under the Fifth Amendment of the United States Constitution nor under K.S.A. 26-513(a). *Koontz*, 570 U.S. at 615Accordingly, because Count I and II are predicated on a finding that a taking took place, and because no taking took place here, the complaint must be dismissed.

**IV.    Conclusion**

Therefore, Defendant's motion for judgment on the pleadings (Docs. 14, 15) is GRANTED. Plaintiffs' motion for partial summary judgment (Doc. 31) is DENIED as moot.

IT IS SO ORDERED. Dated this 22nd day of September, 2025.

                                                                                                                                      __s/ John W. Broomes__
                                                                                                                                      JOHN W. BROOMES
                                                                                                                                      CHIEF UNITED STATES DISTRICT JUDGE